### CAMPBELL vs. HENDERSON.

APPEAL from the court of the sixth district.

MARTIN, J. delivered the opinion of the court. The facts of this case are the same as those in that of *Campbell* vs. *Miller*, lately argued—*Post*, 514. The defendant pleaded the general issue and a fair purchase. He had a verdict and judgment, and the plaintiffs appealed.

If a party withhold proof in his power, which he is not bound to produce, the court may remand the case for a new trial.

The statement of facts shews that Platin deposed, that in 1818, the plaintiff was possessed of Maria, a slave, about fourteen years of age, and of her mother, Mary, and her brother Perry. The witness was overseer of the plaintiff for a month, during which time the slaves were on the plantation.

Grafer deposed that he knew Maria on the plaintiff's plantation, in 1817. The plaintiff married in 1816, and got her with his wife. He knows the wife had a girl of that name before her marriage. He knows the mother Mary and her brother Perry, who were in the plaintiff's possession. He does not know whether the girl in the defendant's possession, is the one possessed by the plaintiff He has not seen her since 1817.

Walker deposed that, in the state of Mississippi, a written sale of slaves is not required by law. Slaves are personal property and acquired to the husband by marriage.

Calvet deposes he has sold many slaves in that state, and thinks the law requires a written sale.

Prescot deposed that, in the fall of 1822, he was the plaintiff's overseer. On the 12th of March five slaves ranaway, i. e. on the 12th

West'n District
Sept. 1823.

CAMPBELL.
vs.
HENDERSON.

or 13th in the morning:—Maria, a jet black negro, about 17 years old, with a downcast countenance, was one of them. In November, 1822, he went with the plaintiff to the defendant. The plaintiff claimed Maria and asked to see her. The defendant said he had a girl of that name, answering the plaintiff's description, but declined shewing her, being informed this would injure him. He said he had bought her from Collier. The witness knew Maria had a brother called Perry, and a mother named Patsey, of this he is not very certain. The description given by the plaintiff was the same as that given by the witness in *Campbell vs. Miller*. The witness in that case, made a mistake as to the month in which the negro escaped. By reference to his notes he finds it was in March.

Fleming deposed that Maria was in the plaintiff's possession ever since his marriage. She left him in the year 1822. She is the girl described by Prescot. She was about 16 in 1822—he has not seen her since. Her mother was named Patsey, and her brother's Perry. The plaintiff asked the defendant whether he had not a girl named Maria, very likely, somewhat downcast. He answered he had,

but could not shew her, being told that this might injure him in the suit. She was sold to the defendant by Collier. The witness does not know, or recollect any thing striking in the appearance of the girl. He was frequently at the plaintiff's and often saw her.

Bowles deposed that the defendant has a black girl, called Maria, about 18 or 19 years old. She has neither a downcast, nor a lively look.

Calvet, a witness for the defendant, deposed he had heard the plaintiff's testimony. Maria, in the defendant's possession, is thick set, heavy made, has a bold look, very remarkably large breasts. He never knew the defendant to have but two slaves named Maria— one an old woman. He has known the girl in the fall, winter and spring, and saw her a week after the defendant got her, and noticed her large breasts.

The defendant introduced an authentic bill of sale for Maria, from George Collier, dated March 28, 1823, duly recorded.

The record shews that the plaintiff made an unsuccessful motion for a new trial.

We are of opinion, that the justice of the case appears to require, it should be sub-

mitted to another jury. The defendant had it in his power, by producing the slave in his possession, to shew that she is not the plaintiff's. He was under no legal obligation of doing so; but we think that his refusal, and the whole circumstances of the case, demand that there should be a new trial.

It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and the case remanded for a new trial—the costs of the appeal to be borne by the defendant and appellee.

*Oakley* and *Thomas* for the plaintiff, *Wilson* for the defendant.